IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:05CR288 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| ALLEN GREEN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant Allen Green's Motion to Vacate, Set Aside, or Correct Sentence by a Federal Prisoner under 28 U.S.C. § 2255 ("§ 2255 Motion") (Filing No. 89) and defendant's Amended Motion to Vacate ("Amended Motion") (Filing No. 105).

## FACTUAL BACKGROUND

On March 29, 2007, defendant Allen Green filed his § 2255 Motion arguing that (1) he entered an unintelligent, unknowing guilty plea because he plead guilty, he suffered from a mental disease and the district court failed to adequately determine his mental state at that time; and (2) his trial counsel rendered ineffective assistance by inducing him to enter a guilty plea without first determining his competency to enter such a plea, notwithstanding counsel's knowledge of Green's serious history of mental illness.

On December 9, 2005, Green appeared before this court and entered a plea of guilty to Count I of an Indictment. *See* Filing No. 52 (no hyperlink available). During the hearing, Green testified under oath that he takes antacid and arthritis medicines. Change of Plea Hearing Transcript ("Ptr.") at 4. Filing No. 96. Green also informed the court that he thought clearly enough to make the decision to enter a plea of guilty. Ptr. at 4. He

confirmed that prior to coming to the decision to plead guilty, he thoroughly discussed his case with his counsel and was satisfied with the services his counsel provided. Ptr. at 5-6.

Green and the government entered into a cooperating plea agreement stipulating that neither party would file motions for upward or downward departure pursuant to United States Sentencing Guidelines ("USSG") §§ 5H1.1 and 5K2.0. Filing No. 51 at ¶ 2. The parties further agreed Green's responsibility constituted more than 5 grams but less than 20 grams of crack cocaine. Filing No. 51 at ¶ 10. Based on this quantity, Green faced a USSG range of 84 months. Ptr. at 7. If the court had concluded that Green was a career offender, his guideline range would have increased to 188 months. Ptr. at 8-10. At the plea hearing, Green confirmed that his defense counsel discussed these possible ranges with Green. Ptr. at 8-10. In response to this potential increase in the guideline range from 84 to 188 months, the court informed Green that it would not accept the plea agreement without a provision allowing an opportunity for the court to address a downward departure on a limited basis. Ptr. at 11. The parties agreed to this modification. Ptr. at 11-14.

Under oath, Green indicated that he freely and voluntarily entered into the plea agreement with the United States. Ptr. at 15. After further discussion, the court found Green "competent to plead, that he understands the nature of the charge filed against him in this case and further understands the possible penalty which may be imposed on conviction of the offense charged." Ptr. at 19. The court concluded that "Green fully understands his rights; that he willingly, voluntarily, knowingly and intelligently waives his rights; and that he fully understands the consequences of waiving his rights." Ptr. at 21. The court then ordered a Presentence Investigation Report ("PSR") and reserved acceptance of the plea agreement pending review of the report. Ptr. 21-22.

2

The PSR supported the categorization of Green as a career offender, placing him at a Base Offense Level of 34.  PSR at ¶ 34.  Filing No. 69.  Green received a three-level adjustment for acceptance of responsibility for a Total Offense Level 31.  PSR at ¶ 34.  Based on 27 criminal history points plus a two-level enhancement for committing the offense less than two years after release from imprisonment, the report placed Green in Criminal History Category VI, PSR at ¶¶ 61, 62, with a corresponding advisory USSG imprisonment range of 188-235 months.  PSR at ¶ 91.  Part C, Offender Characteristics, revealed:

> Mr. Green reported that he has not participated in any recent mental health counseling.  However, he reports a history of mental health problems.  He was committed to the Lincoln Regional Center for an evaluation and, according to a previous Presentence Investigation Report, Mr. Green has suffered from mental health problems for a number of years.  He was reportedly diagnosed as schizophrenic and with a bipolar disorder and has been receiving SS benefits for several years.  The defendant's diagnosis of bipolar disorder was verified by his daughter, LaCole Green, during the Pretrial Services interview and with the probation officer.

PSR at ¶ 81.  Defendant filed no objections to this PSR.

During Green's March 3, 2006, sentencing hearing, the court noted that "Mr. Green had some psychiatric diagnoses earlier in his life . . ." and requested defense counsel to "talk about that when you are doing allocution. . . ."  Sentencing Hearing Transcript ("Str.") at 6.  Filing No. 71.  The probation officer then informed the court that Green waived his interview with probation, and thus probation knew of no specific doctor from which they should request any medical or psychiatric reports.  Str. at 15.  Probation submitted requests to the Social Security Administration, but the Administration did not send back any pertinent information regarding Green's medical history.  Str. at 15.

Prior to his incarceration, Green received Social Security disability benefits.  Str. at 10.  Green reapplied for disability benefits after he completed his time in jail.  Str. at 10-11.

3

The Administration denied his request for benefits, and Green appealed the Commissioner's decision. Str. at 10-11. At the time of his sentencing hearing, Green reported that he saw his doctor, Dr. John McClain, after March 2005, but he had not seen him since. Str. at 11-12. At that time, Green was not taking any medication, but he was undergoing some physical therapy. Str. at 11-12. After additional discussion concerning Green's mental status, the court continued the sentencing to allow Probation to obtain the necessary medical records. Str. at 15-17, 19.

Green appeared again on March 23, 2006, for sentencing. Transcript at Filing No.71. ("Str.2"). At that time, the court confirmed that it had received Green's medical records from the Social Security Administration. Str.2 at 2-3. The District Court received nine pages of documents from the State of Nebraska Department of Corrections and a three-page letter from Dr. John F. McLeay. Str.2 at 3. Defense counsel argued the court should sentence Green below the advisory guidelines stating:

> [T]he items you just received that we have just talked about on the record with respect to my client's mental health and history, one of the things you did receive was a forensic evaluation. It appears it was done in 2000 to determine his competency to stand trial. And while I think the ultimate conclusion was he was competent to stand trial, there is some significant information in there that I think might bear on an appropriate sentence. It appears that my client, Judge, has been diagnosed with schizophrenia and severe distress. The other tests, as far as intellectual capacity and other things, he tested very low.

Str.2 at 4-5. Defense counsel asked the court to impose a lower sentence in consideration of the "offense characteristics, and [Green's] own personal characteristics with respect to what is obviously a diminished capacity for understanding many things." Str.2 at 5.

This court, in reviewing the medical records before it, reasoned:

> [Green] has been diagnosed with low mental function, and with some mental illnesses, although it's not clear from the record exactly what all those mental

4

illnesses might be at the current time.  He was determined by the Social Security Administration disabled due to his health condition, and that included mental health as well as his physical health.  It seems to me that given the extensive criminal record that he has, his mental condition, that a sentence of double what he has served as his longest previous sentence, and a sentence double what his co-defendant received, would be appropriate enough to indicate that he has such a substantial criminal history.  It would reflect the nature of the offense, it would reflect the seriousness of the offense, surely to avoid further conduct by this defendant for at least the next eight to ten years, it probably provides adequate deterrence to criminal conduct, and it avoids an unwarranted sentencing disparity between these two defendants.

Str.2 at 12-13.

After granting a departure, based in part on Green's mental condition, this court sentenced Green to 120 months' incarceration with an accompanying five years of supervised release.  Filing No. 67.  The United States filed a Notice of Appeal, Filing No. 72, but later dismissed its action, Filing No. 78.  Green timely filed his § 2255 motion on March 29, 2007.  Filing No. 89.  He later filed a supplement to his initial filing on May 2, 2007.  Filing No. 92.  The government filed its response on June 22, 2007.  Filing No. 98.  On December 6, 2007, Green filed a motion to amend the original § 2255 motion, Filing No. 105, asking the court to amend his term of imprisonment based on an amendment made to the sentencing guidelines for crack cocaine.[1]

## DISCUSSION

### A.    Standard of Review

28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence. To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the sentence was

---

[1] The court will not address at this time defendant's request that his sentence be reduced pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 706, as the court will take up those issues at a hearing scheduled for December 17, 2008, when the court addresses defendant's Motion to Reduce Sentence Pursuant to Crack Cocaine Amendment 706.  *See* Filing No. 107.

imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* *Hill v. United States*, 368 U.S. 424, 426-27 (1962). Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, 28 U.S.C. § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also* *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

## B.    Green's Competency to Enter a Plea of Guilty

Green avers that since he suffered from a mental disease at the time he entered his guilty plea, the court should have assessed his mental state at that time instead of proceeding with his change of plea hearing. This court reviewed the record and applicable law and concludes that the defendant was competent to enter a guilty plea at the time of his plea hearing. The court concludes, therefore, that Green entered his plea both knowingly and intelligently.

"Due process prohibits the trial and conviction of a defendant who is mentally incompetent." *Vogt v. United States*, 88 F.3d 587, 590 (8th Cir.1996). "It is beyond dispute that a guilty plea must be both knowing and voluntary." *Parke v. Raley*, 506 U.S. 20, 28 (1992). "That is so because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." *Id.* In reviewing a court's determination that a defendant was competent to enter a guilty plea, the Eighth Circuit Court of Appeals has held that "it is

necessary to examine the totality of the circumstances.  We examine whether the indictment gave him notice of the charge, whether he discussed the charge with his attorney or the judge, and we look at any other facts which are in the record." *U.S. v. Marks*, 38 F.3d 1009, 1011 (8th Cir. 1994) *(*internal quotations omitted).  "Retrospective determinations of whether a defendant is competent to stand trial or to plead guilty are strongly disfavored.  Such determinations have 'inherent difficulties' even 'under the most favorable circumstances.'" *Weisberg v. State of Minn.*, 29 F.3d 1271, 1278 (8th Cir. 1994).

Thus, the court concludes that it did not err when it found Green to be competent and declined to conduct a competency hearing.  "Although there are no facts which invariably create a sufficient doubt about a defendant's competency, attention should be paid to any evidence of [the defendant's] irrational behavior, [the defendant's] demeanor before the trial court, available medical evaluations, and whether trial counsel questioned the defendant's competency before the court." *Vogt*, 88 F.3d at 591 (internal quotations and citations omitted).

The record clearly indicates that this court properly considered all of the *Vogt* factors in its determination of Green's competency to enter a plea of guilty.  This court noted no irrational behavior on the part of the defendant.  Further, the court reviewed all available medical evaluations, and even requested additional evaluations from the Social Security Administration.  Finally, when the court asked Green if he took any medications at the time of the plea hearing, he only indicated he took antacid and arthritis medicines; at the time of his plea hearing, Green gave the court no indication that he lacked the mentally competency to enter his plea.  Under oath, Green testified that he fully understood the nature and consequences of the proceedings, and that he could knowingly and intelligently enter a plea of guilty.  Consequently, the court found Green "competent to

plead, that he understands the nature of the charge filed against him in this case and further understands the possible penalty which may be imposed on conviction of the offense charged." Ptr. at 19.

To counter the court's finding of competency, Green has offered no evidence to substantiate his claim of mental incompetence save the fact that he had previously been diagnosed with mental illness prior to this plea hearing. This alone, however, does not support his claim since "[n]ot every manifestation of mental illness demonstrates incompetence to [enter a plea of guilty]. Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to [plead guilty]." *Vogt*, 88 F.3d at 591 (internal quotations omitted). Consequently, Green has failed to meet his burden of demonstrating "that he was incompetent by a preponderance of the evidence." *Id.* at 591.

### C.    Green's Claim of Ineffective Assistance of Counsel

Green contends that because his lawyer did not request a competency hearing prior to his plea hearing, he received ineffective assistance of counsel in violation of his Sixth Amendment right to counsel. Further, Green alleges that his defense counsel "threatened" him and/or coerced him into pleading guilty so that his counsel could avoid the hassle and time of going to trial. Green avers that had it not been for his counsel's strong-arming him into pleading, he would not have plead guilty. Upon review of the record and applicable law, the court concludes that Green did receive effective assistance of counsel; his claim of ineffective assistance of counsel, therefore, has no merit and does not stand.

The Sixth Amendment to the United States Constitution guarantees that an accused shall have "the Assistance of Counsel for his defense." U.S. Const. amend. VI. "It follows

from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate . . . and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (citing *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984)).  *See also Bell v. Cone*, 535 U.S. 685, 695 (2002):

> We reasoned that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things: first, that counsel's 'representation fell below an objective standard of reasonableness,' [*Strickland*,] 466 U.S. at 688. . . ;  and second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id.* at 694. . . .  Without proof of both deficient performance and prejudice to the defense, we concluded, it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' *id.* at 687. . . , and the sentence or conviction should stand.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, the court must examine "whether counsel's assistance was reasonable considering all the circumstances."  *Strickland*, 466 U.S. at 688.  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case."  *Id.* at 690.

At the same time, the court recognizes that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id*.  *Strickland* requires the court to "indulge a strong

9

presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Accordingly, a defendant must overcome the presumption that counsel's challenged action "might be considered sound trial strategy."  *Id.*

In addition to demonstrating that counsel's performance is deficient, "i.e., that 'the identified acts or omissions were outside the wide range of professionally competent assistance' despite the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" the defendant must establish prejudice, i.e., that "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) (quoting *Strickland,* 466 U.S. at 694).

While Green alleges his counsel induced him to plead guilty, he provides the court with no evidence to substantiate this claim.  Instead, the record shows that Green voluntarily entered into a cooperating plea agreement with the United States.  At the plea hearing, Green testified under oath that no one had used any force against him or threatened him in any way to induce him to plead guilty. Ptr. 19:19-25.  He stated he plead guilty of his own free will because he was "in fact guilty of [the] charge."  Ptr. 20:1-10.  In contrast to his current allegations of inducement on the part of his counsel, Green stated at the plea hearing that he "freely and voluntarily enter[ed] into [the] plea agreement with the United States government."  Ptr. 15.  He informed the court he could think clearly enough to make the decision to enter a plea of guilty.  Ptr. 4.  Additionally, Green confirmed that prior to coming to the decision to plead guilty, he had thoroughly discussed his case with his counsel and was satisfied with the services rendered.  Ptr. 5-6.  Green's post-hoc allegations of inducement, therefore, do not stand as Green can point to no evidence in the record with which to support them.

Green also argues that his trial counsel is ineffective for failing to investigate whether he was competent to enter a guilty plea based on his mental health condition. The government counters that his medical records, coupled with his rational behavior and temperament at the time of the plea hearing, show no signs of incompetence. The court has reviewed the available evidence, and consequently, finds that defense counsel's failure to further investigate Green's mental condition at the time of the plea hearing did not render his assistance ineffective for the constitutional purposes of the Sixth Amendment.

Green has offered no evidence to show that he indicated to his defense counsel he could not proceed with his guilty plea due to a mental health condition. Instead, the court finds that "counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. The record does not establish that counsel had, or should have had, any reason to believe that Green was unable to stand trial due a mental health condition.

Defense counsel acknowledged that among the reports at his disposal was a forensic evaluation completed in 2000. At the sentencing hearing, Green's counsel argued that although the ultimate conclusion in the evaluation was that Green had sufficient competency to stand trial, he "ha[d] been diagnosed with schizophrenia and severe distress." Str.2 at 4-5. Defense counsel argued that this court should "take the offense characteristics, and [Green's] own personal characteristics with respect to what is obviously a diminished capacity for understanding many things" and impose a sentence below the USSG advisory sentence. Str.2 at 5.

Defense counsel's strategy at sentencing successfully persuaded the court to find that Green suffered from a diminished capacity; as a result, the court reduced Green's

11

sentence by 68 months.  Thus, the manner in which Green's counsel presented Green's mental health to the court constituted a "trial strategy" and because it was "objectively reasonable, [defendant's] ineffective assistance claim is without merit." *Bowman v. Gammon*, 85 F.3d 1339, 1345 (8th Cir. 1996).

Additionally, Green is unable to establish prejudice due to his counsel's performance. Other than the medical records the court requested and reviewed prior to sentencing (which do not conclude Green is incompetent), Green provides no evidence he was suffering from a mental disease or defect at the time he entered his plea.  Accordingly, the court finds that Green both knowingly and intelligently entered his guilty plea, and consequently, he has not shown ineffectiveness of counsel for failure to further investigate his mental health condition.

## CONCLUSION

For the aforementioned reasons, this court dismisses defendant's § 2255 Motion with prejudice.  Accordingly,

 IT IS ORDERED:

1.  That Green's § 2255 Motion (Filing No. 89) and Amended Motion (Filing No. 105) are dismissed with prejudice; and

2.  The Clerk of Court is directed to mail a copy of this Memorandum and Order to defendant at his last known address.

DATED this 12th day of December, 2008.

BY THE COURT:

s/Joseph F. Battalion
Chief District Judge